IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Watauga Partners, LLC, and C. Gordon Lovingood, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:22-cv-04508-BHH |
| v. | ) ) | **Opinion and Order** |
| Blowing Rock Funding Partners, LLC and Gary W. Parkes, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

This diversity action is before the Court on Defendants Blowing Rock Funding Partners, LLC's ("Blowing Rock") and Gary W. Parkes' ("Parkes") (collectively, "Defendants") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

## BACKGROUND

This case arises out of a dispute between two members of Plaintiff Watauga Partners, LLC ("Watauga"), a member-managed North Carolina Limited Liability Company ("LLC") that was organized for the purpose of owning and developing a parcel of land ("the Property") in Blowing Rock, North Carolina. (ECF No. 28 ¶ 2.) Watauga's members are Plaintiff C. Gordon Lovingood ("Lovingood") and Defendant Blowing Rock, a Delaware LLC, whose sole member is Defendant Parkes. (*Id.* ¶¶ 3-5.)

At the time Blowing Rock was organized, on June 22, 2016, Parkes held a 25% membership interest and his then-wife, Eleanor Menefee Parkes, held a 75% membership interest. (*Id.* ¶ 18.) Following their divorce in October 2018, Eleanor ceded

her entire interest to Parkes, a transfer Lovingood consented to after being assured by Parkes that he had sufficient funds and assets to adequately capitalize Blowing Rock and maintain Blowing Rock's obligation to Watauga. (*Id.* ¶ 31.)

Lovingood and Blowing Rock each hold a 50% membership interest in Watauga. (*Id.* ¶ 19.) Neither member is an agent of Watauga; rather, the Operating Agreement (the "Agreement") of Watauga made by and between Lovingood and Blowing Rock on June 20, 2016, designates Lovingood and Parkes as Watauga's managers. (ECF No. 28-1 at 8, 13.)

Several of the Agreement's provision are implicated in this case and are discussed further below. In sum, Lovingood contends that Blowing Rock is a member in default under the terms of the Agreement based on several actions and inactions. Plaintiffs, therefore, ask this Court to declare Blowing Rock in default under the Agreement and to declare Lovingood the sole and managing member of Watauga. (ECF No. 28 ¶ 63.)

In their second cause of action entitled "judicial dissociation," Plaintiffs also pray for an order setting the value of Blowing Rock's economic interest in Watauga in accordance with Section 9.3 of the Agreement and directing the terms by which Watauga and/or Lovingood must complete the purchase of that interest. (*Id.* ¶ 70.) Thus, Plaintiffs contend that they are entitled to invoke the default buy-out provisions of the Agreement, and they ask this Court to, first, determine Blowing Rock's membership interest in Watauga and, second, establish the terms of purchase of that interest by Lovingood. (*Id.*)

Lastly, Plaintiffs assert a cause of action entitled "breach of contract / contractual indemnity / breach of fiduciary duty against Defendants," wherein they contend, through Blowing Rock's default, that Blowing Rock is in breach of the Agreement and that Parkes

is individually and jointly and severally liable with Blowing Rock for Blowing Rock's obligations to Plaintiffs – namely, "to make contributions to [Watauga] in an amount sufficient to allow [Watauga] to fund its ongoing obligations, as detailed in the Agreement." (*Id*. ¶ 72. *See also id*. ¶¶ 73-78.)

## ALLEGATIONS IN THE COMPLAINT

On July 1, 2016, Watauga purchased the Property. (*Id*. ¶ 23.) Lovingood and Blowing Rock each contributed $433,250.25 in cash to the closing. (*Id*. ¶ 24.)

Beginning 2018 to the present, Parkes suffered a series of personal events preventing him from attending to the ordinary business of Blowing Rock or Watauga. Blowing Rock ceased all contributions of capital or effort to Watauga, and Parkes failed to communicate with Lovingood for months at a time. (*Id*. ¶ 27.) As a result, Lovingood performed all the responsibilities that were intended to fall on both members and managers of Watauga. (*Id*. ¶ 28.)

Since closing through August 2, 2023, Lovingood has paid $447,533.95 to or on behalf of Watauga in conjunction with advancement of the development of the Property. (*Id*. ¶ 29.) Since closing through December 31, 2021, Blowing Rock has contributed $179,848.01 to Watauga, and neither Blowing Rock nor Parkes has performed any other act or contributed any service to advance the purpose of Watauga. (*Id*. ¶ 35.)

Beginning in late 2019 and up to the filing of the instant action, Lovingood made numerous demands on Defendants to contribute funds to Watauga. (*Id*. ¶ 36.) While Defendants have made offers to contribute reimbursement funds, Plaintiffs claim that Defendants have refused to pay any amount sufficient to reimburse Lovingood or to fund

the on-going operations of Watauga. (*Id.* ¶ 44.) Thus, Plaintiffs rejected such offers as being insufficient to fund the purpose of Watauga as required under the Agreement. (*Id.*)

Due to Lovingood's growing concerns that Parkes has inadequately capitalized Blowing Rock, he requested sworn and certified financial statements, as well as tax returns, from Defendants. (*Id.* ¶ 47.) Lovingood determined Defendants' response fell short of providing adequate assurances that Defendants were able to participate in and fund the development of the Property. (*Id.*)

On August 10, 2021, Lovingood declared Blowing Rock in default under the Agreement for its failure to contribute capital and services, and he demanded that Blowing Rock cure that default. (*Id.* ¶ 41.) Plaintiffs claim Blowing Rock failed to directly respond. (*Id.*)

On September 2, 2021, Lovingood demanded that Defendants transmit financial statements to Lovingood and Watauga's financial institution, Beacon Community Bank. (*Id.* ¶ 42.) In response, Defendants recapped Blowing Rock's previous contributions to Watauga but did not respond to Lovingood's request for further capital contributions and financial records. (*Id.*)

Because the default was not cured, Plaintiffs contend that Blowing Rock has not been and is not entitled to vote on or participate in conducting the business of Watauga and that Lovingood was entitled to move forward with completion of the development of the Property as the sole non-defaulting member and manager. (*Id.* ¶ 52.)

In August 2022, Lovingood alleges that he exercised his authority as the sole non-defaulting member and manager pursuant to section 5.6 of the Operating Agreement and called for a $200,000.00 Additional Capital Contribution from each member. (*Id.* ¶¶ 53,

55.) Lovingood deposited his contribution on August 30, 2022, but Blowing Rock failed to make its contribution or otherwise cure its default. Plaintiffs claim that no response has been received from Defendants regarding this capital call. (*Id.* ¶ 56.)

On September 28, 2022, Lovingood's counsel sent a notice of default to Defendants officially declaring Blowing Rock in default for failing to make a required capital contribution to Watauga, for failing to make adequate assurances, and for generally failing to adequately capitalize Blowing Rock. (*Id.* ¶ 57. *See* ECF No. 28 at Ex. B.) This correspondence also requested that Defendants provide a demand for the value of Blowing Rock's membership interest so that Lovingood could negotiate the purchase of same and move forward with the development of the Property. (*Id.*)

On November 23, 2022, Blowing Rock's counsel responded to counsel for Lovingood, denying that Blowing Rock has engaged in any conduct placing it in default under the Agreement. (*Id.* ¶ 58. *See* ECF No. 28 at Ex. C.) Plaintiffs claim that the response failed to provide responsive information and did not attempt to cure the default. (*Id.* ¶ 58.)

This lawsuit ensued.

## APPLICABLE LAW

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As stated in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Here, Plaintiffs attached to their complaint the Agreement, the September 28, 2022, letter from Lovingood's attorney to Defendants, and the November 23, 2022, letter Blowing Rock's attorney sent in response. There is no dispute that these documents are integral to the complaint and are specifically referenced in the complaint. Further, their authenticity has not been questioned. Accordingly, the Court will consider them in conjunction with Defendants' motion to dismiss.

As for Plaintiffs' request for declaratory judgment against Defendants, "[t]he Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal

6

relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)). In determining whether an actual controversy exists, the court focuses on whether the parties have a real controversy with adverse legal interests and whether the dispute is hypothetical or abstract. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). A court has subject-matter jurisdiction over a claim for declaratory relief if "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (quotations omitted); see 28 U.S.C. § 2201; *Steffel v. Thompson*, 415 U.S. 452, 458 (1974).

To have standing to seek a declaratory judgment, a plaintiff "must establish an ongoing or future injury in fact." *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018); *see O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 201 (D.S.C. 2019); *Meyer v. McMaster*, 394 F. Supp. 3d 550, 559 (D.S.C. 2019). "That injury also must be traceable to the defendant and redressable by a favorable court decision." *Sasso v. Tesla, Inc.*, 584 F. Supp. 3d 60, 71 (E.D.N.C. 2022), *aff'd sub nom. Challenge Printing Co. of the Carolinas v. Tesla, Inc.,* No. 22-2057, 2024 WL 2795180 (4th Cir. May 31, 2024).

7

**DISCUSSION**

Plaintiffs' complaint seeks a declaratory judgment under North Carolina and federal law, asking the Court to declare that Blowing Rock breached the Agreement and is in default and that, as a result, Lovingood is entitled to invoke the default buy-out provisions of the Agreement. (*See* ECF No. 28 (First and Second Causes of Action); *see also* ECF No. 34 at 2.) Thus, the issue in this case is one of contract interpretation. Specifically, the issue is whether Plaintiffs have plausibly alleged "the existence of a contract between plaintiff and defendant, the specific provisions breached, the facts constituting the breach, and the amount of damages resulting to plaintiff from such breach." *RGK. Inc. v. U.S. Fid. & Guar. Co*., 292 N.C. 668, 675, 235 S.E.2d 234, 238 (1977); *Cantrell v. Woodhill Enters., Inc.,* 273 N.C. 490, 497, 160 S.E.2d 476, 481 (1968).

As an initial matter, the Agreement contains a choice of law provision:

> Section 2.7. **Governing Law.** This Agreement and all questions with respect to the rights and obligations of the members, the construction, enforcement and interpretation hereof, and the formation, administration and termination of [Watauga] shall be governed by the provision of the [North Carolina Limited Liability Company] Act and the other applicable law of the State of North Carolina.

(ECF No. 28-1 at 12.) "A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599-600 (4th Cir.2004). "Choice of law clauses are generally honored in South Carolina." Team IA, Inc. v. Lucas, 395 S.C. 237, 717 S.E.2d 103, 108 (S.C. Ct. App. 2011). It is also well settled in the Fourth Circuit that the enforcement of a choice of law provision is favored. *Albemarle Corp. v. AstraZeneca UK Ltd*., 628 F.3d 643, 649-50 (4th Cir. 2010) (quoting *The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 15 (1972)). *See also*

*Worley Claims Servs., LLC v. Jefferies*, 429 F. Supp. 3d 146, 155 (W.D.N.C. 2019) ("[W]here parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect.").

Here, the parties agreed on North Carolina law, and they rely on North Carolina law in their briefing.[1] Accordingly, the Court respects the Agreement's choice of law provision and considers the Agreement in light of North Carolina law.

Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of the contract." *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 276 (2019). "Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." *State v. Philip Morris USA Inc.*, 363 N.C. 623, 631 (2009). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." *Carolina Power & Light Co. v. Bowman*, 229 N.C. 682, 693-94 (1949). Terms in a contract are to be "interpreted according to their usual, ordinary, and commonly accepted meaning." *Anderson v. Allstate Ins. Co.*, 266 N.C. 309, 312 (1966). "Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be." *Crockett v. First Fed. Sav. & Loan Ass' n*, 289 N.C. 620, 631 (1976). "[A] contract is to be construed

---

[1] Plaintiffs also contend that Delaware law applies "[t]o the extent internal governance matters of Defendant [Blowing Rock] are relevant to any cause of action." (ECF No. 28 ¶ 10.) From their briefing, it appears Plaintiffs only contend that Delaware law applies to some of their theories of liability against Parkes, individually, for Blowing Rock's alleged debts to Plaintiffs. (*See* ECF No. 34 at 20-22.) There is no dispute between the parties that North Carolina law governs the interpretation of the Agreement for purposes of determining whether Plaintiffs have plausibly alleged an act of default by Blowing Rock. (*See* ECF No. 34 at 3, 7.)

as a whole with each provision considered in the context of the entire contract." *Lattimore v. Fisher's Food Shoppe, Inc.*, 313 N.C. 467, 473 (1985).

Pursuant to Article IX of the Agreement, Plaintiffs allege that Blowing Rock breached the Agreement by defaulting on several matters, namely:

1. Failing to maintain its legal existence while asserting membership status in Watauga;

2. Failing to maintain its own adequate capitalization both by the departure of Blowing Rock's 75 % majority membership interest and the failure of the sole remaining member, Parkes, to ensure adequate capitalization;

3. Failing to respond for requests for information and adequate assurances of financial ability to maintain its obligations to Watauga;

4. Failing to respond to calls for Additional Capital Contributions as requested by the Agreement; and

5. Failing to make payments toward financing, property taxes, and development expenses of the Property.

(ECF No. 28 ¶ 62.)

## Operating Agreement

Article IX of the Agreement entitled "Defaults" contains Section 9.1, which provides that "[t]he happening of any one of the following events shall be deemed a "Default" as to any Member:"

(a)     The sale, assignment, mortgage, pledge, voluntary encumbrance, transfer, hypothecation or disposition of any kind, by operation of law or otherwise, by such Member, without the prior written consent of all of the other Members, of all or any part of his Membership Interest, or any of the funds thereof, or any funds due or to become due therefrom, except as expressly permitted by this Agreement;

(b)     An event of Bankruptcy as to that Member;

(c)     The causing by any creditor of such Member of any form of lien, levy, attachment or execution to issue against such Member, his Membership Interest or a substantial part of his assets based upon the

10

separate debts of such Member unrelated to the Company, unless such lien, levy, attachment or execution is being contested in good faith by such Member and he has provided security satisfactory to the other Members therefor, or is finally set aside within sixty (60) days;

> (d) The occurrence of a default by such Member in timely making any Capital Contribution or loan to the Company; or

> (e) The occurrence of a default other than a failure to make a required Capital Contribution or loan to the Company by such Member in performing his material obligations under this Agreement if, within thirty (30) days after written notice of default to such Member from any non-Defaulting Member or Manager, the defaulting Member does not cure such default or commence in good faith all actions necessary to effect such cure and consummate such cure within one hundred eight (180) days after such notice of default.

(ECF No. 28-1 at 30.) Section 9.2 provides that "[a]ny Member who is in Default under Section 9.1 shall, from such date of Default until the Default is cured, have no right to vote on or participate in the management or conduct of any aspect of [Watauga]'s business." (*Id.*)

The Court notes that the subject line of the September 28, 2022, letter to Defendants, "Notice of Default," outlines three of the five acts of default alleged in the complaint – part of #2, #3 and #4 – and states which portion of Section 9.1 Plaintiffs are relying on.

As to the transfer of 75% majority membership interest in Blowing Rock to Parkes from his ex-wife (the former interest holder), it states that "[t]his is an Act of Default under Section 9.1.(a) of the Agreement, for which there is no Right to Cure." (ECF No. 28-2 at 1.)

As to Blowing Rock's alleged failure to respond to the capital call, it states that "[t]his constitutes multiple Acts of Default under Section 9.1(d) of the Agreement, for which there is no Right to Cure." (*Id.* at 1-2.)

And, finally, as to Blowing Rock's alleged failure to provide adequate assurance of its financial stability to perform, including through providing Parkes' personal financials as the sole member of Blowing Rock, it states that Defendants "are required to supply this information on demand pursuant to Section 11.9 of the Agreement" and that failing to do so "is an act of Default under Section 9.1(e) of the Agreement." (*Id.* at 2.)

As to the acts of default alleged in #1 and #5, above, the complaint does not allege, and the attachments do not shed any light on which portion(s) of Section 9.1 Plaintiffs are relying on to support their contention that these actions by Blowing Rock are acts of default under the Agreement.

The Court addresses each alleged act of default in turn.

<u>**Alleged Acts of Default**</u>

1. **Blowing Rock's Failure to Maintain Its Legal Existence With the Delaware Secretary of State From June 1, 2020, Through March 12, 2021.**

Plaintiffs allege that, while asserting membership status in Watauga, Blowing Rock allowed its legal existence and good standing to be terminated by the Delaware Secretary of State from June 1, 2020, to March 12, 2021, at which time its existence was reinstated. (ECF No. 28 ¶ 34.) Lovingood claims that he was not informed of this period of termination. (*Id.*) According to Plaintiffs, such conduct is an act of default under the Agreement.

As noted above, it is unclear which portion of Section 9.1 Plaintiffs are relying on to support that this alleged conduct is an act of default under the Agreement. Plaintiffs seemingly acknowledge their inability to direct the Court to any language in the Agreement supporting this claim, as they state:

> Assuming that there is no such term in this or any other Operating Agreement that would make this a 'material obligation', the actual existence

12

> and continued existence of an entity member of an LLC should be a
> requirement implied by law.  At a minimum, the failure to maintain and
> protect one's legal existence should constitute a breach of the implied duty
> of good faith and fair dealing.

(ECF No. 34 at 13.) First, the Court notes that there are no allegations in the complaint that any other operating agreement exists or controls this dispute.[2] Second, upon close review of the entire Agreement, the Court finds no terms therein plausibly supporting that such alleged conduct by Blowing Rock constitutes an act of default under the Agreement. The Court declines to find such a requirement implied by law where, here, the parties entered into a contract and agreed on what actions or inactions by a member would be deemed an act of default, as set forth in Section 9.1 of the Agreement. The plain, express, unambiguous terms of the Agreement do not plausibly support that Blowing Rock's temporarily failure to maintain its status with the Delaware Secretary of State constitutes an act of default under the Agreement.

The Court is similarly not persuaded by Plaintiffs' reliance on the implied duty of good faith and fair dealing. Under North Carolina law, contracts implicitly contain "the basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform [its] obligations under the agreement." *Maglione v. Aegis Fam. Health Ctrs.*, 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005) (quotation omitted). Where parties have executed a written contract, an action for "breach of the covenant of good faith and fair dealing is part and parcel of a claim for breach of contract." *McKinney v. Nationstar Mortg., LLC*, No. 5:15-CV-637-FL, 2016 WL 3659898, at *8 (E.D.N.C. July 1, 2016) (unpublished)

---

[2] *See also* ECF No. 28-1 at 37 (Section 11.6, "Entire Agreement," providing that the Agreement constitutes the entire agreement with respect the matters therein and that the Agreement "supersedes all prior agreements and oral understandings among the Company and the Members with respect to such matters").

(quotation and alteration omitted); *see Murray v. Nationwide Mut. Ins. Co*., 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996). While breach of the implied covenant of good faith and fair dealing sometimes can be a separate claim from breach of contract, *see Nadendla v. WakeMed*, 24 F.4th 299, 306-08 (4th Cir. 2022), North Carolina courts have held that where there was no breach of contract, "it would be illogical . . . to conclude that [the party] somehow breached implied terms of the same contract." *SunTrust Bank v. Bryant/Sutphin Props., LLC*, 222 N.C. App. 821, 833, 732 S.E.2d 594, 603 (2012); *see Arnesen v. Rivers Edge Golf Club & Plantation, Inc*., 368 N.C. 440, 451, 781 S.E.2d 1, 9 (2015); *Spitzer-Tremblay v. Wells Fargo Bank, N. A*., 250 N.C. App. 508, 793 S.E.2d 281, 2016 WL 6695825, at *4 (2016) (unpublished table decision); *see also Sutherland v. Domer*, No. 1:17CV769, 2018 WL 4398259, at *5 (M.D.N.C. Sept. 14, 2018) (unpublished) ("When a plaintiff's claim for breach of the implied covenant of good faith is based on an alleged breach of the express terms of the contract, these two claims are treated as a single breach of contract issue and evaluated together . . . . Where a plaintiff argues that the implied covenant was breached separate and apart from express breaches of the contract, it remains true that the implied covenant can never produce a result contrary to, or inconsistent with, the express language used in the agreement.") Thus, because the express language in Section 9.1 of the Agreement does not support that this alleged conduct by Blowing Rock is an act of default, the Court holds that it would be "illogical" for it to find Blowing Rock's alleged conduct breached implied terms of the Agreement. *See Dillon v. Leazer Grp., Inc., 374 F. Supp. 3d 547, 556 (E.D.N.C. 2019) (noting that "an asserted implied term cannot be used to contradict the express terms of a contract"); *see also Vetco Concrete Co. v.*

14

*Troy Lumber Co*., 256 N.C. 709, 713, 124 S.E.2d 905 (1962) ("[A]n express contract precludes an implied contract with reference to the same matter."). Moreover, the complaint contains no allegations showing how this alleged conduct has caused Blowing Rock to breach the Agreement or resulted in Blowing Rock's breach of the Agreement.

2. **Blowing Rock's Failure to Maintain Its Own Adequate Capitalization By (a) the Departure of Blowing Rock's 75% Majority Membership Interest in 2018, and (b) Parkes' Failure Thereafter to Adequately Capitalize Blowing Rock.**

The complaint alleges that, as part of Parkes' and Eleanor's divorce on October 9, 2018, "Eleanor ceded her entire 75% membership interest to Parkes." (ECF No. 28 ¶ 30.) Plaintiffs allege that this action left Blowing Rock without "substantial assets to ensure the ongoing funding of the project" because Eleanor had "substantial personal assets." (*Id*.) Plaintiffs admits in the complaint that Lovingood consented to the transfer, but they allege Lovingood did so upon Parkes' false assurances of sufficient funds, assets, and resources to adequately capitalize Blowing Rock. (*Id.* ¶ 31.) Thus, Plaintiffs allege that Lovingood's "consent to the membership transfer is void for fraud in the inducement." (*Id*.)

As noted above, Plaintiffs contend that the 2018 transfer event is an act of default under Section 9.1(a) of the Agreement. This section unambiguously states that the transfer by a member of all or any part of his membership interest is an act of default *if* the transfer occurs "without the prior written consent of all of the other Members." (ECF No. 28-1 at 29-30.) Here, it is undisputed and, in fact, is admitted by Plaintiffs that Lovingood consented to the 2018 transfer to Parkes of Eleanor's interests in and to Blowing Rock. (*See* ECF No. 28 ¶ 31. *See also* ECF No. 28-3 at 2.) Aware of this fact and presumably in an attempt to avoid the impact of this critical detail, Lovingood alleges the defense of fraud in the inducement. (ECF No. 28 ¶ 31.) However, while Lovingood may

have a defense for why he consented,[3] this does not change the fact that neither Eleanor nor Parkes engaged in a transfer that violated Section 9.1(a) of the Agreement. Indeed, it is evident from the allegations in the complaint and the attachments thereto that Eleanor and Parkes did not commit an act of default under Section 9.1(a) because she did not cede all of her membership interest to Parkes without the prior written consent of Lovingood.

Plaintiffs also allege that Blowing Rock is in default due to Parkes' alleged failure to adequately capitalize Blowing Rock "due to his personal financial difficulties and a fiscal inability to maintain adequate capitalization." (ECF No. 28 ¶ 46.) In their memorandum in opposition, Plaintiffs contend that this alleged failure is an act of default under Section 9.1(e) because it is a failure to perform a "material obligation" under the Agreement. (*See* ECF No. 34 at 13.)

While the term "material obligations" is not defined in the Agreement, Article V entitled "Capital Contributions and Financial Obligations of Members, sets forth the financial obligations of Watauga's members. A review of the terms therein reveals no financial obligation of Watauga's members to maintain a certain amount of financing. Moreover, a review of the entire Agreement reveals no terms setting forth the specific amount of money needed for a member to be considered adequately capitalized, or declaring a member in default if the member fails to maintain an adequate amount of capital. Rather, if because of inadequate capitalization, a member fails to contribute any

---

[3] To establish a defense of fraud in the inducement, a plaintiff must prove the nine elements of fraud as well as the following three elements: "(1) that the alleged fraudfeasor made a false representation relating to a present or preexisting fact; (2) that the alleged fraudfeasor intended to deceive him; and (3) that he had a right to rely on the representation made to him." *Darby v. Waterboggan of Myrtle Beach, Inc.*, 288 S.C. 579, 584, 344 S.E.2d 153, 155 (Ct. App. 1986).

additional capital required under Article V, Section 5.6 of the Agreement, **then** the member has committed an act of default under the Agreement, as discussed further below. Accordingly, the Court holds that Plaintiffs have failed to plausibly allege that Parkes' alleged failure to adequately capitalize Blowing Rock is a failure to perform a "material obligation" under the Agreement resulting in default under Section 9.1(e).

3. **Blowing Rock's Failure to Respond to Lovingood's 2021 Request for Information and Adequate Assurances of Financial Ability to Maintain Its Obligations to Watauga**

Plaintiffs allege that "[o]n September 2, 2021, Lovingood demanded that Parkes and [Blowing Rock] transmit financial statements to Lovingood and [Watauga's bank], to provide assurance and facilitate the renewal of the [bank] note." (ECF No. 28 ¶ 42.) According to the complaint, a response was received by Lovingood, but financials were not provided. (*Id.*) The September 28, 2022, letter to Defendants further indicates that Lovingood requested Parkes' "personal financials," including his "returns" and "a sworn, CPA reviewed Personal Financial Statement in a form suitable to the LLC's creditors." (ECF No. 28-2 at 2.) This letter provides that Defendants are required to supply the requested information pursuant to Section 11.9 of the Agreement and that a failure to do so is an act of default under Section 9.1(e). (*Id.*) Thus, like #2, above, the alleged conduct by Blowing Rock is not a specified event under Section 9.1 of the Agreement. Rather, Plaintiffs contend that such conduct is an act of default because it is a failure to perform a "material obligation" under the Agreement.

Section 11.9 appears within Article XI of the Agreement, and it is entitled "Miscellaneous Provisions." This Section provides that each member agrees to make further assurances, including by "deliver[ing] such further information," and "provid[ing] all information" that may be "useful to carry out the intent and purpose of th[e] Agreement."

(ECF No. 28-1 at 27.) However, even assuming *arguendo* that Lovingood's September 2, 2021, request falls within this section, such that Blowing Rock was required to provide the information sought, it remains implausible under the unambiguous terms contained in Article IX that Blowing Rock's failure to adequately respond, *in Lovingood's estimation*, is a breach of its "material obligations" under the Agreement or is otherwise an act of default under Section 9.1.

### 4. Blowing Rock's Failure to Respond to Lovingood's August 2022 Call for a $200,000.00 Additional Capital Contribution.

The complaint alleges that "in August 2022, Lovingood exercised the authority granted to him as a manager pursuant to Section 5.6 of the Agreement to call for a $200,000.00 Additional Capital Contribution from each member." (ECF No. 28 ¶ 55.) Plaintiffs claim that Lovingood's conduct was in accordance with Section 5.6 because Blowing Rock was in default (based on the alleged failures discussed above and #5, below) and, thus, Blowing Rock was "not entitled to vote on or participate in the conduct of the Company's business, pursuant to Section 4.1 and 9.2 of the Agreement" at the time of this capital call. (*Id*. ¶ 52.) The complaint then alleges that, while Lovingood "deposited his $200,00.00 Additional Capital Contribution in the Watauga Partners operating account on August 30, 2022," Blowing Rock "failed to make its Additional Capital Contribution, or otherwise cure its default, and neither Parkes nor [Blowing Rock] have otherwise responded to the capital call in any way." (*Id*. ¶ 56.) The September 28, 2022, letter was sent shortly thereafter, informing Defendants that Blowing Rock's failure to deposit its $200,000.00 Additional Capital Contribution is an act of default under Section 9.1(d) of the Agreement. (*See* ECF No. 29-2 at 1-2.)

In Defendants' responsive letter, dated November 23, 2022, they deny that Blowing Rock has engaged in any acts of default and state that additional capital calls require unanimous approval of the members under the Agreement. (*See* ECF No. 28-3 at 1.) Indeed, in Defendants' motion to dismiss, they argue that Blowing Rock was not required to make this payment pursuant to the plain and unambiguous terms of the Agreement. (ECF No. 29 at 7.) They first point to Section 4.10(d), which states that "the Members and Managers . . . shall not be required to contribute any additional capital or lend any funds to the Company except as expressly provided herein or to the extent required by law." (*Id*. at 8; ECF No. 28-1 at 17.) According to Defendants, the "only instance in which the Agreement <u>expressly</u> contemplates the Members' provision of additional monies is found in Section 5.6." (ECF No. 29 at 8.) (emphasis is original).

Section 5.6 entitled "Additional Contribution" appears within Article V entitled "Capital Contributions and Financial Obligations of Members," and it states:

> It is anticipated that the development and construction of a project on the Property will require substantial additional funds, **some of which will require additional contributions by the Members**. **If the Members shall deem it necessary or appropriate to obtain needed funds by raising additional capital, the Members may, by unanimous written consent, obtain all or part of the necessary funds** to own, hold, develop and construct improvements upon the Property for the use(s) determined by the Members, **by (i) requiring that each Member contribute his Percentage Interest of all or part of the additional funds as an additional capital contribution to the Company**, (ii) admitting new Members pursuant to Section 5.8 hereof or (iii) any combination of the foregoing.

(ECF No. 28-1 at 21.) (emphasis added.) Section 5.7 then provides that:

> If any Member shall fail to contribute any additional capital required by the Members pursuant to <u>Section 5.6</u> hereof, such failure shall be deemed a Default under <u>Article IX</u>, then in addition to any other rights and remedies the non-Defaulting Members and the Company may have against the Defaulting Member under this Agreement, including, without limitation, the

19

right to purchase the Defaulting Member's Membership Interest pursuant to
Section 9.3 hereof, at law or in equity . . . .

(*Id.* at 21-22.) (emphasis in original). Based on this express language in the Agreement,
Defendants argue that Plaintiffs' allegations of default based on Blowing Rock's failure to
pay $200,000.00 is not plausible because there are no allegations in the complaint that
the members provided "unanimous written consent," as required by Section 5.6. (ECF
No. 29 at 9.) Rather, they note that the complaint alleges that Lovingood unilaterally, as a
manager, called for the capital contribution. (*Id.*)

Indeed, there is no dispute that the express and unambiguous terms of Section 5.6
require that "the Members shall deem it necessary or appropriate to obtain needed funds
by raising additional capital" and that "the Members may, by unanimous written consent,
obtain all or part of the necessary funds . . . by (i) requiring that each Member contribute
. . . as an additional capital contribution to the Company . . . ." (ECF No. 28-1 at 21.) Here,
the complaint contains no allegations that both members deemed it necessary or
appropriate to obtain additional capital or that both members provided unanimous written
consent that each would contribute $200,000.00 as an additional capital contribution to
Watauga. Rather, the complaint alleges that Blowing Rock was in default no later than
August 10, 2021, and thus, Blowing Rock "has not been and is not entitled to vote on or
participate in the conduct of [Watauga]'s business, pursuant to Section 4.1 and 9.2 of the
Agreement." (ECF No. 28 ¶ 52.)

Article IV entitled "Management" states in relevant part:

Section 4.1 **Management Authority and Powers.** Management of the
Company shall be vested in the Members. The Members shall vote in
proportion to their Percentage Interests, and a "Majority" shall consist of the
vote or other approval of Members whose aggregate Percentage Interests
are fifty-one percent (51 %) or more. No Member is an agent of the
Company and only the Managers may act on behalf of the Company as

authorized by the Members hereunder. Unless expressly provided otherwise in the Act, the Company's Articles of Organization or this Agreement, any action required or permitted to be taken by the Members may be taken upon the vote or other approval of a Majority. **If at any time any one or more of the Members shall be in Default and shall not be entitled to vote on or participate in the conduct of the Company's business pursuant to Section 9 .2 hereof**, and unless expressly provided otherwise in the Act, the Company's Articles of Organization or this Agreement, **then a Majority shall be the vote or other approval of Members whose aggregate Percentage Interests are fifty-one percent (51 %) or more of the aggregate Percentage Interest of Members who are not in Default and who are entitled to vote on or participate in the conduct of the Company's business**.

(ECF No. 28-1 at 13.) (emphasis added). Thus, pursuant to this section, Plaintiffs argue that "any vote by Lovingood was both a Majority vote and the unanimous consent of the Members." (ECF No. 34 at 14.)

To summarize the relevant provisions, pursuant to the express terms of Section 5.7, if a member is *required* under Section 5.6 to make an additional capital contribution, and the member fails to do so, such a failure is deemed an act of default under Article IX, Section 9.1(d). Thus, the first question is whether the complaint plausibly alleges that Blowing Rock was required under Section 5.6 to pay the $200,000.00. As just outlined, Lovingood attempts to circumvent the "unanimous written consent**"** requirement of Section 5.6 by alleging that Blowing Rock engaged in other, prior conduct that placed it in default under Section 9.1 prior to his capital call. However, as discussed above and below, the Court finds that Plaintiffs have failed to plausibly allege that Blowing Rock was in default under the Agreement prior to the capital call. It follows then, and the Court so finds, that Blowing Rock's failure to respond to Lovingood's unilateral capital call is not an act of default under Sections 5.7 and 9.1(d) of the Agreement because the $200,000.000 Additional Contribution was not a required payment under Section 5.6.

**5.** **Blowing Rock's Failure to Make Payments Toward Financing, Property Taxes, and Developmental Expenses of the Property**

Plaintiffs' final allegation of default is based on Lovingood's claim that Blowing Rock has not contributed certain funding to Watauga since closing on the Property. Specifically, the complaint alleges that as early as 2018, Blowing Rock "ceased all contributions of capital" to Watauga. (ECF No. 28 ¶ 27.) As a result, Lovingood claims that he "was required to either personally fund the day-to-day expenses of the company or risk allowing the project to fail." (*Id.* ¶ 28.) Indeed, since closing on the Property, he states that he "has paid $447,533.95 to or on behalf of Watauga Partners to cover taxes, interest, and expenses incurred in conjunction with [his] efforts to . . . develop the Property." (*Id.* ¶ 29.) He alleges that he has a right to reimbursement for all expenses he has personally incurred pursuant to Section 4.5[4] and a right to demand that Blowing Rock "make equal contributions . . . to allow for such reimbursement and to fund the ongoing expenses expected for a development." (*Id.*)

As to Blowing Rock's money contributions, Plaintiffs further allege that Blowing Rock's last direct payment to Watauga since the closing was on December 31, 2021, for its one-half share of the property taxes. (*Id.* ¶¶ 35, 43.) Plaintiffs also allege that Blowing Rock made offers to contribute reimbursement funds to Watauga but that these offers

---

[4] Section 4.5 entitled "Reimbursement" states:

> All expenses incurred with respect to the organization, operation and management of the Company shall be borne by the Company. Members appropriately incurring or paying expenses on behalf of the Company shall be entitled to reimbursement from the Company for direct expenses allocable to the organization, operation and management of the Company.

(ECF No. 28-1 at 15.)

were rejected by Lovingood, as they were "far less than are owed for [Blowing Rock]'s share of expenses." (*Id.* ¶ 44.)

Based on the above allegations, Plaintiffs contend that Blowing Rock is a member in default due to its "failure to actually make payments toward financing, property taxes, and development expenses of the Property." (*Id.* ¶ 62(e).) As noted above, it is unclear in the complaint which provision of Section 9.1 Plaintiffs are relying on to support that this alleged conduct is an act of default under the Agreement. However, in their memorandum in opposition, Plaintiffs argue that they have sufficiently alleged how Defendants have abandoned their obligations to participate in Watauga "both materially and economically," and they state that "[c]learly, these are 'material obligations under [the] Agreement' as referred to in Section 9.1(e)." (ECF No. 34 at 17.) Plaintiffs also point to the agreement as a whole and argue that implicit in both Section 1.1.(d) and Section 5.6 "is the concept that the Members will make regular and substantial contributions." (*Id.* at 16.)

In reply, Defendants argue that the plain terms of the agreement do not support that Blowing Rock was required to pay various sums of money to Watauga that Lovingood unilaterally demanded of it, and which are based on activities Lovingood unilaterally chose to pursue without the consent of Blowing Rock. The Court agrees with Defendants.

As noted by Defendants, when Watauga was formed, the members made a Capital Contribution of $1,000.00 each. (*See* ECF No. 28-1 at 20, 39.) Pursuant to Section 4.10(d), the Members and Managers "shall not be required to contribute an additional capital or lend any funds to [Watauga], except as expressly provided herein or to the extent required by law." (*Id.* at 17.) The provision of the Agreement expressly providing for additional financial contributions by members is Section 5.6. But, as discussed above,

23

there are no allegations in the complaint to support that the funding Lovingood demanded from Blowing Rock was a required contribution under 5.6, or otherwise was required pursuant to any other provision in the Agreement. While the Court certainly agrees with Plaintiffs that the Agreement contemplates and anticipates that each member will contribute more funding to Watauga to develop the Property, the express and unambiguous terms in the Agreement do not plausibly support that a member may unilaterally spend his own money on the project without the consent of the other member, demand equal contribution and/or reimbursement from the other member, and then unilaterally declare that the other member is in default under the Agreement for failing to pay the additional funds demanded.

In sum, for all the reasons set forth above, the Court finds that the complaint fails to plausibly allege that Blowing Rock has breached the Agreement and is a member in default, as described in Article IX of the Agreement. Accordingly, the Court grants Defendants' motion and dismisses Plaintiffs' declaratory judgment claim (first cause of action) and judicial disassociation (second cause of action) claim against Blowing Rock.

### **Third Cause of Action**

Plaintiffs' third cause of action is a combined claim for "breach of contract, contractual indemnity, and breach of fiduciary duty. (ECF No. 28 ¶¶ 71-78.) Plaintiffs bring this combined claim against both Blowing Rock and Parkes. (*Id*.) Notably, Plaintiffs state they asserted this cause of action against Defendants "to ensure that [Blowing Rock] and/or Parkes' failure to make regular and sufficient contributions to [Watauga] are adequately credited to [Watauga] and Lovingood in the calculation of Lovingood's buy-out of [Blowing Rock]." (*Id*. at 20-21. *See also id*. at 23 (stating that "Plaintiffs only ask

that all potentially open hands are involved so that they may be bound by the by-out provisions of the Operating Agreement").) Indeed, as summarized by Plaintiffs, by bringing this lawsuit, "Plaintiffs' simply seek to enforce the terms of the Operating Agreement by 1) obtaining judicial confirmation that [Blowing Rock] is in default and 2) forcing [Blowing Rock] into the default buy-out procedures contained in Article IX of the Operating Agreement." (ECF No. 34 at 3.)

Accordingly, because the Court has determined that the complaint does not plausibly allege that Blowing Rock failed to "make contributions to [Watauga] . . . as detailed in the Agreement" or that Blowing Rock engaged in any other conduct constituting an act of default under the Agreement, the Court dismisses this cause of action without prejudice.

## CONCLUSION

Based on the foregoing, the Court **grants** Defendants' motion to dismiss [ECF No. 29] Plaintiffs' second amended complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. The Court hereby dismisses the first and second causes of action with prejudice and the third cause of action without prejudice.

**IT IS SO ORDERED.**

/s/ *Bruce Howe Hendricks*
United States District Judge

June 28, 2024
Charleston, South Carolina

25